IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## SHAWN KELLY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**Nos. C01-342, C01-343     Lee Moore, Judge**

---

**No. W2004-02211-CCA-R3-PC  - Filed August 1, 2005**

---

The petitioner, Shawn Kelly, appeals the dismissal of his petition for post-conviction relief by the Dyer County Circuit Court.  He seeks relief from two convictions for the sale of one-half gram or more of cocaine, a Class B felony, and his concurrent sentences of twelve and fifteen years.  The petitioner was convicted by a jury of one drug offense and pled guilty to the other drug offense.  He contends that he received the ineffective assistance of counsel in both cases, that he was denied his constitutional right to an impartial jury, that his guilty plea was not voluntary, and that the trial court erred in not allowing him to inspect the grand jury minutes relating to his indictments.  We affirm the trial court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Jim W. Horner, District Public Defender, Howell Tod Taylor, Assistant Public Defender, and Patrick R. McGill (on appeal), Assistant Public Defender, for the appellant, Shawn Kelly.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen Waddell Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This petition for post-conviction relief concerns two separate cases.  In case C01-342, the petitioner was convicted by a jury of selling one-half gram or more of cocaine and sentenced as a Range II, multiple offender to fifteen years.  The petitioner's motion for new trial was denied, and he appealed.  The indictment in case C01-343 charged the petitioner with two counts of selling one-half gram or more of cocaine.  The petitioner pled guilty to count two and was sentenced as a Range II, multiple offender to twelve years to be served concurrently with his sentence for the previous

conviction. Pursuant to his plea agreement, the petitioner waived his appeal in case C01-342 in exchange for the state's dismissing count one of the indictment in case C01-343.

The petitioner filed a petition[1] for post-conviction relief from his convictions in both cases alleging the ineffective assistance of counsel, involuntary guilty plea, and denial of his right to an impartial jury. Regarding the ineffective assistance of counsel, he contends that his attorney was ineffective in case C01-342 for (1) failing to request independent testing of the substance to determine whether it contained baking powder, (2) failing to investigate thoroughly whether the state had made promises to the codefendants in exchange for their testimony against the petitioner, (3) failing to object when the state referred to the witness, Jason Hill, as "agent" or "officer" Hill in front of the jury, and (4) failing to file a written request for a jury instruction concerning circumstantial evidence. Regarding case C01-343, in which the petitioner pled guilty, he contends that his counsel was ineffective for failing to argue the indictment was insufficient and failing to file a motion to inspect the grand jury minutes for proof that the indictment violated constitutional prohibitions against double jeopardy. Respecting his guilty plea, the petitioner contends that it was involuntary because (1) the factual basis for the guilty plea was inaccurate, (2) he was coerced by the trial court and his attorney to accept the state's plea offer in spite of his expressed desire to go to trial, and (3) neither his attorney nor the trial court had informed him that the issues raised in his motion for new trial in case C01-342 could not be raised in his petition for post-conviction relief, even though he waived his appeal in that case. As a separate issue, the petitioner alleges that some of the jurors at his trial prejudged his guilt based on the way he was dressed, thereby denying him his constitutional right to an impartial jury.

At the post-conviction hearing, the petitioner testified that his attorney represented him in several cases, including the trial on the drug charge in case C01-342 at which two codefendants testified against him. He said that Ms. Clinton, one of the codefendants, had come to him asking for baking soda, not drugs, and that he gave her some baking soda. He said that he testified to this fact at trial and asked his attorney to test the drug evidence for the presence of baking soda to corroborate his testimony but that he did not receive the results of such a test. He said that he also asked his attorney to file a request for certain jury instructions and that his attorney failed to do so, but he did not recall what jury instructions he had requested. He said that during the trial, a witness named Hill testified that he provided money to the codefendants to purchase drugs from the petitioner. He said that the state referred to the witness as "agent Hill" or "undercover officer Hill" and that this characterization was erroneous but that his attorney failed to object.

The petitioner testified that he presented a motion to his attorney on the day they appeared in court concerning case C01-343 and asked him to argue the issue but that his attorney refused. He said the motion called for dismissal of the indictment because it was legally insufficient. He

---

[1]Because the petitioner's convictions arose from a trial and a separate guilty plea proceeding, he was obligated to file a separate petition for relief as to each conviction. See T.C.A. § 40-30-104(c). However, many of the allegations regarding the petitioner's guilty plea are in his original and first amended petitions, which purport to attack only the case number relating to his trial. His second amendment to his petition purports to "include" the guilty plea case in his appeal. In the interest of justice, we will review both cases.

admitted that the motion erroneously referred to indictment 342-B and explained that he "was just going by the docket on the indictment that he had." He said that he never received a copy of the indictment in case C01-343 and that he and his attorney never discussed the facts, the investigation, or any type of defense relating to that case. He said his attorney merely informed him that the petitioner did not have a case and that "it was better to get twelve than twenty," referring to the sentence he could receive as punishment.

The petitioner testified that he did not want to plead guilty in case C01-343, that he did not know at the time the charge to which he was pleading, and that he did not want to waive his appeal in case C01-342. He admitted he pled guilty in order to receive a twelve-year sentence. He claimed that his attorney informed him during one of their meetings that his sentence could be sixty-five years. However, he said he informed the trial court during the plea hearing that he would rather go to trial.

On cross-examination, the petitioner acknowledged that the state referred to witness Hill as an "agent" and that he was uncertain whether the term "officer" was ever used. The trial court then questioned the petitioner as to why he pled guilty at the guilty plea hearing if he did not wish to do so, and the petitioner replied that he was "going along" with his attorney and following his attorney's advice, which he said he had not wanted to do.

Ronald Armstrong testified that he transported the petitioner from the prison to the courthouse on the day the petitioner pled guilty and that he witnessed a heated discussion between the petitioner and his attorney. He said that the conversation concerned signing a document and that both men were cursing each other. Charles Moore testified that he accompanied Mr. Armstrong when he transported the petitioner to court and that he also saw the petitioner and his attorney engaged in a heated discussion with some cursing.

The attorney testified that he represented the petitioner at his trial during which two codefendants, Ms. Clinton and Mr. Moten, testified for the state. He recalled that both witnesses denied the state had promised them anything with respect to their testifying at the petitioner's trial. He said he did not believe either codefendant. He said that he did not recall whether the codefendants' attorney was in the courtroom but that even if he were present, he did not believe he could have called the attorney to impeach the codefendants' testimony. He said that discussions during plea negotiations were not admissible and that as far as he knew, the codefendants had not finalized any plea agreements with the state at that point. Presented with orders of nolle prosequi concerning Ms. Clinton and Mr. Moten, he acknowledged the orders were dated October 8, 2002, approximately three weeks after the petitioner's trial. He said the motion for new trial in petitioner's case was heard in February 2003. He said he did not believe that evidence of the state's decision not to prosecute the codefendants would have changed the outcome on the petitioner's motion for new trial.

On cross-examination, the attorney testified that he met with the petitioner nine times in preparation for the trial in case C01-342 and that the petitioner missed four appointments. He said

-3-

that when he considered all of the cases in which he represented the petitioner, a total of twenty-nine meetings had been scheduled: five at the office, two at the jail, five at the prison, thirteen times in court, and four for which the petitioner did not show. He acknowledged that at one point, he wrote the petitioner a letter because the petitioner would not communicate with him. He said he discussed the facts and the charges in both drug cases with the petitioner. He said they discussed severing counts one and two in case C01-343 because the offenses allegedly occurred on different dates. He acknowledged that the petitioner gave him a motion titled, "Motion to Quash the Indictment," which he wanted him to argue, but that the case number on the front of the document was erroneously listed as C02-166. He said that case number referred to a felony weapons charge for which the petitioner was acquitted. He said the petitioner wanted him to argue that the indictment failed to set out sufficient facts to inform the petitioner of the charge. He said that the indictment was sufficient, however, and that the motion was baseless. He acknowledged that he requested the trial court to instruct the jury on the issue of corroborating witnesses, which the trial court granted, but that he did not request a jury instruction on circumstantial evidence. He said that the trial court always instructs the jury on this issue and that it did so in this case. The attorney testified that Hill was a corrections officer and that he did not recall whether or not the state referred to Hill as an officer during the trial. He did recall that he cross-examined Hill concerning his title and job status and that nothing in his testimony gave cause for an objection. He acknowledged cross-examining the two codefendants vigorously about any agreements they may have had with the state regarding their testimony in the petitioner's trial. He said neither witness admitted making any deals.

Regarding the guilty plea hearing in case C01-343, the attorney testified that he and the petitioner discussed the facts relating to that case while preparing for trial in case C01-342 and an additional thirteen or fourteen times afterward. He said that the petitioner appeared to understand the sentence range and release eligibility relating to the offense, based on his Range II classification. He acknowledged that he believed the plea agreement benefitted the petitioner and that he advised the petitioner accordingly. He said he and the petitioner discussed the effect of waiving his appeal in case C01-342. He said that the petitioner was not happy with the idea but that he knew what he was doing when he signed the waiver. He said he told the petitioner they would have to go to trial on case C01-343 to preserve his right to appeal the other case. He said that he and the petitioner had a good relationship, that the petitioner complimented him more than once on his representation, and that he did not recall a heated discussion occurring between them. He said that there were times the petitioner was upset by the state's plea offer and that they may have used foul language in communicating with each other but that he did not try to force the petitioner to plead guilty at any time. However, he admitted telling the petitioner that he would be crazy not to accept the state's offer. He said the state had two witnesses who would testify that they were involved in buying drugs from the petitioner. He recalled the petitioner's stating at the guilty plea hearing that he would rather go to trial but said he did not believe that the petitioner had changed his mind about pleading guilty or that he did not know what was happening. He conceded that during some of his meetings with the petitioner, the petitioner said he did not want to plead guilty and would rather have a trial. He acknowledged that when it came time to plead or go to trial, he and the petitioner discussed the terms of the plea agreement, which included no additional jail time or fine in lieu of his right to appeal.

He said the petitioner agreed that pleading guilty was in his best interest even though he was not happy about it.

On redirect examination, the attorney was asked what he thought the petitioner meant when he stated he would rather go to trial. The attorney said that he interpreted the statement literally but that the petitioner proceeded to plead guilty. He admitted that he probably did not give the petitioner a copy of the indictment in case C01-343 but said that he and the petitioner reviewed the petitioner's file, which contained the indictment. He said that the petitioner wanted the twelve-year concurrent sentence and also to preserve his appeal but that waiver of the appeal was a necessary part of the plea agreement.

The attorney testified again as a witness for the state. He said that in preparing the motion for new trial, he interviewed the jurors in the petitioner's trial and subpoenaed one of them, Fred Hanks, to testify at the hearing on the motion about whether the jury determined the petitioner's guilt based solely on his appearance at trial. He said someone overheard a juror comment that the guilty verdict was based on the petitioner's attire during the trial. He said he telephoned every juror and spoke with more than half of them. He said Mr. Hanks told him that he thought the petitioner was guilty based upon his appearance and that other jurors felt the same way. He said the other jurors admitted noticing the way the petitioner was dressed but also told him they did not consider the petitioner's testimony at trial to be credible. He said Mr. Hanks testified at the motion for new trial that the jurors considered the proof presented at trial and did not convict the petitioner based solely on the way he looked.

In denying the petitioner relief, the trial court found that the indictment in the petitioner's case was sufficient and that his motion to dismiss the indictment was meritless. As for whether the petitioner's attorney was ineffective for failing to require independent testing of the drug evidence, the trial court noted that the presence of baking soda was immaterial because the evidence contained 2.7 grams of cocaine. The trial court found the petitioner's claim that he had no knowledge of the contents of the indictment in case C01-343 to be incredible, noting that the attorney testified that he reviewed the indictment with the petitioner and that the petitioner agreed with the factual summary presented by the state at the guilty plea hearing. The trial court found the attorney was not ineffective for failing to establish that a deal existed between the state and the codefendants who testified for the state at trial. It noted that the attorney cross-examined the codefendants on this issue and that both of them denied making any deal, even though their cases were subsequently dismissed. As for failing to call the codefendant's attorney to testify, the trial court noted the petitioner failed to present evidence at the post-conviction hearing as to what testimony the attorney would have given. Regarding his attorney's failure to object to the state's referring to Hill as "agent" or "officer" Hill, the trial court found no ineffective assistance of counsel or prejudice to the petitioner. The trial court also found the petitioner's claim that his attorney was ineffective for failing to request specific jury instructions warranted no relief because the petitioner could not recall what jury instructions he had requested and the trial court instructed the jury concerning circumstantial evidence.

With respect to the voluntariness of the petitioner's guilty plea, the trial court observed that the petitioner's trial was set for the date he entered his plea, the terms of the plea agreement were presented at the plea hearing, and the state recited in detail the factual basis for the plea. The petitioner was sworn and questioned carefully about whether he understood his constitutional rights and at the point the petitioner appeared hesitant, the trial court asked him what he wanted to do and he responded that he intended to follow his attorney's advice. The only disturbing issue for the trial court was the petitioner's statement that he would "rather go to trial," after which the standard guilty plea colloquy occurred. However, the trial court noted that during the post-conviction hearing, the petitioner was asked why he continued with the hearing if he in fact wanted to go to trial, and he replied he was following his attorney's advice. He then indicated that he understood he was admitting guilt to the indicted offense and that in light of the proof the state would present, it was in his best interest to plead guilty. The court found it significant that the petitioner indicated at the plea hearing that his attorney answered all the questions he had about his plea and the charges against him, that his attorney did everything he had asked him to do and not done anything improper, and that he was completely satisfied with his attorney's representation in his case. Accordingly, the court concluded that the petitioner's guilty plea was given knowingly and voluntarily. It found that he was not coerced into pleading guilty, that he was fully aware of what he was doing at that time, and that he was properly advised of the constitutional rights as required by Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969).

The trial court also found that the petitioner's attorney had properly investigated case C01-343, that he discussed this case with the petitioner, and that he was prepared to go to trial on the charges if necessary. The court determined that the petitioner failed to prove deficient performance by his attorney or that any deficient performance resulted in prejudice to his case. In addition, the petitioner failed to prove a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. The trial court noted that the jury had been removed from the courtroom but was waiting in another area for the trial to commence and that the petitioner could have stopped the guilty plea hearing at any point and proceeded with his trial if he had wanted to do so.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

With regard to his trial in case C01-342, the petitioner contends that his attorney was ineffective for failing to request independent testing of the drug evidence for the presence of baking powder, failing to impeach the codefendants' testimony with evidence that the state had made promises to them in exchange for their testimony against the petitioner, failing to object to the state's characterization of the witness, Jason Hill, as "agent" or "officer" Hill, and failing to request a specific jury instruction concerning circumstantial evidence. Regarding case C01-343, which resulted in the petitioner's pleading guilty, the petitioner contends that his counsel was ineffective for failing to argue that the indictment was insufficient and for failing to file a motion to inspect the grand jury minutes for proof that the indictment violated prohibitions against double jeopardy.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f). A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). However, we review the trial court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, under a de novo standard. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims that ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. The court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

As for the attorney's failure to test the white powder for the presence of baking soda, we note first that no testimony or evidence concerning this issue was presented at the post-conviction hearing. In his brief, the petitioner argues that his attorney should have performed tests because the results would have corroborated his testimony that he gave Ms. Clinton only baking soda and that, even though the petitioner likewise failed to present evidence that the white powder contained baking soda, the mere possibility that the powder contained baking soda should be sufficient to establish that the proceedings were fundamentally unfair. However, post-conviction relief is not based on

possibilities. The record supports the trial court's findings, and we conclude the petitioner's attorney did not perform deficiently.

The petitioner alleges that his attorney's performance was deficient for failure to establish that the codefendants entered into an agreement with the state whereby they would testify against the petitioner at trial in exchange for dismissal of the charges against them. He contends that evidence of such an agreement would have discredited the codefendants' testimony, thus weakening the state's case, and also that the trial court would have been much more likely to grant the petitioner a new trial if this evidence was presented. The trial court found that the attorney was not ineffective for failing to establish that a deal existed between the state and the codefendants and noted that the attorney questioned the codefendants concerning any possible deals during his cross-examination. The codefendants denied entering any agreements with the state. The trial court also observed that the petitioner failed to present evidence at the post-conviction hearing as to what testimony the codefendants' attorney would have given regarding agreements between the parties. When a petitioner contends that his trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This is the only way to show that the failure to interview a witness inured to his prejudice or that the failure to call the witness to the stand resulted in the denial of critical evidence which prejudiced the petitioner. See id. at 757. Neither the trial court nor this court may speculate on what a witness' testimony might have been if introduced by counsel. Id. We conclude that the petitioner has failed to demonstrate deficient performance by his attorney or that any deficiency prejudiced his case.

The petitioner contends that his attorney's failure to object to the state's characterization of the witness, Jason Hill, as "agent" or "officer" Hill prejudiced his case by giving Hill's testimony unwarranted weight. He contends that the state's reference was improper and his trial was rendered fundamentally unfair because his attorney failed to bring the error to the court's attention. At the post-conviction hearing, the petitioner acknowledged that the state referred to witness Hill as an "agent" and that he was uncertain whether the state ever used the term "officer." With regard to the state's reference to Hill's role in the investigation, the trial court found that the attorney's performance was not deficient and that the petitioner was not prejudiced. The record does not preponderate against this finding. During cross-examination, the petitioner's attorney asked Hill if he was a police officer at the time the offense was committed, and Hill replied that he was not. During closing argument, the state told the jury that Jason Hill became an officer shortly after the drug offense in issue was committed. The state explained that Hill was working undercover with the Dyersburg Police Department on the date of the offense. We believe that these statements removed any potential confusion on the part of the jury as to Hill's status during the commission of the offense and during his testimony and that any reference by the state regarding his status did not prejudice the petitioner.

The petitioner also contends that his attorney's failure to request a different jury instruction on circumstantial evidence constituted deficient performance. The petitioner relies upon Marable v. State, 313 S.W.2d 451, 456 (Tenn. 1958), in which the Tennessee Supreme Court stated four rules

by which evidence should be tested in circumstantial cases: (1) the evidence should be acted upon with caution, (2) all of the essential facts must be consistent with the hypothesis of guilt, (3) the facts must exclude every other reasonable theory except that of guilt, and (4) the facts must establish such a certainty of guilt as to convince beyond a reasonable doubt that the defendant is the perpetrator of the crime. In his brief, the petitioner concedes that the trial court's instructions to the jury were taken from Tennessee Criminal Pattern Jury Instructions, 42.03, but argues that the court should have emphasized that circumstantial evidence "must be acted on with caution" because of the concentration of circumstantial evidence in his case. The petitioner asserts that the instruction given the jury was incomplete and his attorney's failure to request a "more defense favorable" instruction misled the jury and resulted in prejudicial error.

The record reflects that the trial court gave the following instruction regarding circumstantial and direct evidence:

> One type of evidence is called direct evidence, and the other is called circumstantial evidence. Direct evidence is those parts of the testimony admitted in court which refer to what happened and was testified to by witnesses who saw, or heard, or otherwise sensed what happened firsthand. If witnesses testified about what . . . they, themselves, saw, or heard, or otherwise sensed, they presented direct evidence.

> Circumstantial evidence is all the testimony and exhibits which give you clues about what happened in an indirect way. It consists of all the evidence which is not direct evidence. Do not assume that direct evidence is always better than circumstantial evidence. According to our laws, direct evidence is not necessarily better than circumstantial evidence. Either type of evidence can prove a fact, if it is convincing enough.

> A defendant may be convicted on direct evidence, circumstantial evidence, or both. When the evidence is entirely circumstantial, then before you would be justified in finding the defendant guilty, you must find that all the essential facts are consistent with the theory of guilt, and the facts must include every other reasonable theory, except that of guilt.

In finding no deficient performance by the attorney or prejudice to the petitioner, the trial court noted that the jury was instructed concerning circumstantial evidence and that the petitioner could not recall what specific jury instructions he would have preferred when he testified at the post-conviction hearing.

"[A] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). However, when jury instructions are full, fair, and accurate statements of the law, a trial court is not required to provide special instructions. State v. Mann, 959 S.W.2d 503, 521 (Tenn. 1997); State v. Kelley, 683 S.W.2d 1, 6 (Tenn. Crim. App. 1984).

The petitioner contends that the trial court should have instructed the jury to act upon circumstantial evidence with caution based upon the concentration of circumstantial evidence in his case. In Marable, upon which the petitioner relies, the state's case was based entirely upon circumstantial evidence. Such is not the situation here. The state's proof in the petitioner's case contained a significant amount of direct evidence: the testimony of the codefendant who purchased cocaine from the petitioner and two additional witnesses who were also involved in the drug sale. The petitioner failed to show how the instructions given the jury failed to convey a correct and complete charge of the law regarding the standard for weighing direct and circumstantial evidence or how they were incomplete or misled the jury. The record does not preponderate against the trial court's findings.

The petitioner also contends that his attorney was deficient for failing to argue that the indictment in case C01-343 was insufficient. The record reflects that the petitioner drafted a motion to quash the indictment and asked his attorney to argue it. His attorney refused, finding the indictment sufficient. In his motion, the petitioner alleged that the indictment lacked the dates, times and other specifics necessary to inform him of the charges he must defend against.

Count one of the indictment states:

> The GRAND JURORS of Dyer County, Tennessee, duly empaneled and sworn upon their oath present that SHAWN KELLY aka SHUN KELLY, SHANE KELLY, heretofore, to-wit, on or about May 23, 2001, and before the return of this indictment, in Dyer County, Tennessee, did unlawfully and knowingly sell a controlled substance, to-wit, cocaine, in an amount in excess of .5 grams, a Schedule II drug as classified in the Tennessee Drug Act of 1989 T.C.A. § 39-17-408 in violation of T.C.A. § 39-17-417, a Class B Felony, all of which is against the peace and dignity of the State of Tennessee.

The language in count two is identical to that in count one, except the offense is alleged to have occurred on August 1, 2001. The trial court found that the indictment was sufficient and that the motion was meritless.

For constitutional purposes, "an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double

jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). The indictment must also state the facts constituting the offense "in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty, which will enable the court, on conviction, to pronounce the proper judgment." T.C.A. § 40-13-202.

Based on the information contained in the petitioner's indictment, we conclude that it was constitutionally valid and provided sufficient information to satisfy the statutory requirements. Accordingly, the attorney's refusal to argue the motion did not constitute deficient performance, and the record does not preponderate against the trial court's findings.

The petitioner contends that his attorney was ineffective for failing to file a motion to inspect the grand jury minutes relating to his indictments and that the trial court erred in not allowing him to inspect the minutes for the post-conviction hearing. He asserts that the motion was essentially one of discovery and requested the state to produce exculpatory evidence. He argues that the transcripts of the grand jury proceeding may reveal that the evidence used to support the indictment in case C01-343 was identical to that used to support the indictment in case C01-342, thereby providing evidence that the state violated constitutional guarantees of due process and the prohibitions against double jeopardy in handing down the second indictment.

The record reflects that in denying the petitioner's motion, the trial court found he was not entitled to grand jury records. With certain exceptions, grand jury proceedings are to remain secret. See Tenn. R. Crim. P. 6(k)(1) (stating that grand jury proceedings should be kept secret); Tenn. R. Crim. P. 6(k)(2) (allowing disclosure of grand jury proceedings to ascertain if the testimony of a witness before the grand jury is consistent with the testimony of the witness at trial and allowing disclosure of grand jury testimony of any witness charged with perjury); Tenn. R. Crim. P. 16(a)(3) (requiring the state to provide as discovery to the defendant any "recorded testimony of the defendant before a grand jury which relates to the offense charged"); see also T.C.A. §§ 40-12-209, -210; State v. Carruthers, 35 S.W.3d 516, 533 (Tenn. 2000). Disclosure of proceedings and related documents may be permitted by a court upon motion of the defendant showing grounds exist for a motion to dismiss the indictment because of matters occurring before the grand jury. T.C.A. § 40-12-210(3). The record does not reflect that the petitioner made such a showing. We conclude that his attorney was not ineffective by failing to request the grand jury minutes and that the trial court properly denied the petitioner access to the minutes.

In his brief, the petitioner also argues that even if none of the deficiencies in his attorney's performance fell below the standard of competence required of attorneys when viewed individually, he should be entitled to relief due to the cumulative effect of the deficiencies. However, we have concluded that the petitioner failed to show that counsel's performance was deficient in any respect, and, thus, no improper prejudice exists to accumulate.

## II.  RIGHT TO IMPARTIAL JURY

The petitioner contends that some of the jurors prejudged his guilt based on his attire, thereby denying him his constitutional right to an impartial jury.  At the post-conviction hearing, the petitioner's attorney testified for the state regarding this issue, but the petitioner did not testify or present any evidence concerning his appearance during the trial.  One of the jurors, Mr. Hanks, testified at the petitioner's hearing on his motion for new trial that the petitioner was convicted based upon his testimony and the proof presented at trial but acknowledged that he felt the petitioner "was guilty by looking at him."  The trial court recalled that the petitioner had appeared in court wearing a black suit made of either velour or crushed velvet with a long coat and the petitioner's attorney admitted that the petitioner looked "like a drug dealer that day."  The attorney informed the trial court that the petitioner chose his attire over his objection and that he had advised the petitioner to wear different clothes.  In denying the motion for new trial, the trial court found that Mr. Hanks had considered the proof presented at the trial before he made a determination concerning the petitioner's guilt and that the evidence was insufficient to conclude the jury's verdict was based upon the petitioner's clothing.

The record reflects that the petitioner voluntarily chose his courtroom attire and did so against the advice of his attorney.  He did not base any objection to the consequences of this action on a deficiency in the performance of his attorney, and an appeal of the trial court's ruling on this matter is not reviewable in a petition for post-conviction relief.  We note, as well, that the testimony of Mr. Hanks was not admissible as evidence concerning this issue because a juror is not permitted to testify concerning his or her own internal thoughts, motivations, or emotions during deliberations.  See Tenn. R. Evid. 606(b); State v. Blackwell, 664 S.W.2d 686, 688 (Tenn. 1984); Robert D. Walsh v. State, __ S.W.3d __, No. W2003-02040-SC-R11-PC, Shelby County, slip op. at 5 (Tenn. June 24, 2005).

## III.  GUILTY PLEA

Respecting his guilty plea, the petitioner contends that it was involuntary because the factual basis for the guilty plea was inaccurate and he was coerced by the trial court and his attorney to accept the state's plea offer in spite of his expressed desire to go to trial.  He argues that at the point he appeared hesitant at the guilty plea hearing, the trial court should have halted the proceedings in accordance with the petitioner's stated preference for trial.  He concedes that he stated at the guilty plea hearing that he believed it was in his best interest to plead guilty but claims that one should not conclude from this statement that he did not want to go to trial.  He also concedes that he told the trial court his guilty plea was voluntary but claims that the record clearly shows his statement was merely a "conditioned response."  He further contends that the trial court's failure to inform him that the issues raised in his motion for new trial in case C01-342 could not be raised in his petition for post-conviction relief rendered his guilty plea to case C01-343 involuntary.  The state contends that the petitioner pled guilty to avoid the possibility of a greater sentence and that, even though he displayed some hesitancy during the guilty plea hearing, his plea was voluntary and knowing.  As for the claims raised in the petitioner's motion for new trial being pretermitted from further review

by his decision to waive his appeal, the state asserts that knowledge of collateral consequences is not a prerequisite to a knowing and voluntary guilty plea.

At the guilty plea hearing, the petitioner's attorney reviewed the terms of the plea agreement, i.e., the petitioner would voluntarily dismiss his appeal in case C01-342, plead guilty to count two in case C01-343, and receive a sentence of twelve years to run concurrent to the fifteen-year sentence previously received. In addition, count one would be dismissed with prejudice. The state summarized the factual basis for the guilty plea as follows:

> Fact situation, Your Honor, on this case which is C01-343, Count Two, would have shown that on Wednesday, August 1, 2001 investigators with the Dyersburg Police Department, Investigators Thayer, Joyner and Jamie Gordon with the Dyer County Sheriff's Department met with an undercover officer, actual police officer at that time, Jason Hill who met with a confidential informant, Kenny Melton, for the purpose of conducting undercover drug buys.

> Proof would have been that this officer and this informant have worked numerous cases, somewhere sixty to a hundred cases. Most have resulted in convictions, that they have both been very reliable, productive undercover officer and agent. And Officer Hill was given a hundred dollars by the investigator with which to buy drugs. Mr. Melton was fitted with an electronic transmitter, a kelset. And they would testify the purpose of this was to ensure the safety of the officers, not necessarily produce a tape, but to make sure nothing went wrong during the buy.

> There was some background noise produced, the officer, undercover officer, would have testified that when they went into the defendant's house–Now, proof is they knew [the petitioner], had known him for sometime and had been to his house before–Proof would have been that when they went into the house he turned the TV up louder and there was some background noise in that tape making it hard for some of that to be heard, but the officers monitoring this buy were able to pick out three distinct voices being the undercover officer, the confidential informant and [the petitioner]. They knew–all the officers knew [the petitioner] and knew his voice.

> At the house were only the three people, [the petitioner] and the undercover officer and the confidential informant. [The petitioner] makes small talk for awhile and then brings our a ball of crack cocaine, a rather substantial size ball, chips away some pieces with a razor blade and does sell them to Officer Hill for a hundred

-13-

dollars; gives Mr. Melton a few crumbs.  They take the drugs back to the officers.  They test positive once they're sent to the lab for cocaine and weighed 1.3 grams, Your Honor.

In response to questioning by the trial court, the petitioner indicated that he knew he was testifying under oath and that he understood that by pleading guilty he was waiving his right to a jury trial, right to assistance of counsel, right to confront witnesses against him, and right against self-incrimination.  Thereafter, the following colloquy occurred:

| | |
|---|---|
| [COURT]: | All right.  Do you understand now that if the Court accepts your plea of guilty that there will be no trial, there will be no appeal and this case will be over other than the Court imposing the negotiated sentence?  Do you understand that? |
| [PETITIONER]: | Yes, sir. |
| [COURT]: | All right, . . . you seem to be hesitating.  Do you want to proceed with this plea or do you want to start your trial? |
| [ATTORNEY]: | Your Honor, he understands his rights. What he's asking me, I don't mind telling the Court, is . . . if I think that it's the right thing to do. |
| [COURT]: | Oh. |
| [ATTORNEY]: | That's – I don't mind telling the Court, that's what our – |
| [COURT]: | What do you want to do . . .? |
| [PETITIONER]: | I mean, I'm gonna follow my attorney. |
| [COURT]: | All right. |
| [PETITIONER]: | I'd rather go to trial. |
| [COURT]: | Do you understand now that you are admitting guilt to one count of sale of cocaine in excess of .5 grams? |

[PETITIONER]:     Yes, sir.

[COURT]:          All right. Now, [the state] has summarized the facts of how you were involved in this case. Is that information correct?

[PETITIONER]:     Somewhat.

[COURT]:          Well, I've got to know where it's not correct, if it's not correct.

[ATTORNEY]:       I've explained to [the petitioner] that that would be the proof in the case.

[COURT]:          All right. Well, let me – let me go at it a different way . . . . After discussing the information with your attorney, do you understand that that's what evidence the state would have to introduce if the case proceeded to trial?

[PETITIONER]:     Yes, sir.

[COURT]:          Knowing what that evidence is, do you think it's in your best interest to enter this plea of guilty?

[PETITIONER]:     Yes, sir.

[COURT]:          Now, has [your attorney] answered all the questions that you have about the charge pending against you and your plea today?

[PETITIONER]:     Yes, sir.

[COURT]:          Has he done everything that you have asked him to do and expected him to do in preparing your case for trial?

[PETITIONER]:     Yes, sir.

[COURT]:          Is there anything that [your attorney] has not done that you feel he should have done?

-15-

[PETITIONER]: No, sir.

[COURT]: Are you satisfied then completely with the way [your attorney] has represented you in this case?

[PETITIONER]: Yes, sir.

[COURT]: Do you understand that if you should be found guilty of another criminal offense at a later date that your conviction in this case could be used to enhance or increase your punishment in that latter case?

[PETITIONER]: Yes, sir.

[COURT]: Are you voluntarily pleading guilty of your own free will and choice?

[PETITIONER]: Yes, sir. My –

[COURT]: Has anyone other than the plea arrangement or agreement, has anyone promised you anything to get you to enter this plea?

[PETITIONER]: No, sir.

[COURT]: Has anyone threatened you in any way –

[PETITIONER]: No, sir.

[COURT]: – or tried to force you to enter this plea?

[PETITIONER]: No, sir.

[COURT]: Are you under the influence of any alcohol, any drug or any medication today?

[PETITIONER]: No, sir.

[COURT]: Do you know full well what you're doing now in entering this plea of guilty . . . ?

-16-

[PETITIONER]:      Yes, sir.

[COURT]:           Do you have any question about your plea at
                   this point?

[PETITIONER]:      No, sir.

        . . . .

[COURT]:           Now, . . . I've just received this document it's
                   entitled Plea of Guilty and Waivers of Jury
                   Trial and Appeal. It's got a front side to it and
                   a back side. Have you just read it or you've
                   gone over it with [your attorney] and signed
                   the document?

[PETITIONER]:      Yes, sir.

[COURT]:           And do you understand the contents? Do you
                   understand what's in the document?

[PETITIONER]:      Yes, sir.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). These circumstances include

> the relative intelligence of the defendant; the degree of his familiarity
> with criminal proceedings; whether he was represented by competent
> counsel and had the opportunity to confer with counsel about the
> options available to him; the extent of advice from counsel and the
> court concerning the charges against him; and the reasons for his
> decision to plead guilty, including a desire to avoid a greater penalty
> that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A plea resulting from ignorance, misunderstanding, coercion, inducements, or threats is not "voluntary." Id.

The trial court is charged with determining if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. State v. Pettus, 986

-17-

S.W.2d 540, 542 (Tenn. 1999); Blankenship, 858 S.W.2d at 904. In Boykin v. Alabama, the United States Supreme Court clearly enunciated that certain constitutional rights are implicated in a plea of guilty, namely, the right to a trial by jury, the right to confront witnesses, and the privilege against compelled self-incrimination, and that it would not presume a waiver of these three important rights from a silent record. 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Rule 11(c)(3), Tenn. R. Crim. P., outlines specific advice to be given a defendant entering a plea and explicit procedures for insuring on the record that pleas of guilty are voluntarily and understandingly made. However, only the constitutionally-grounded rights stated in Boykin are addressable, per se, under the Post-Conviction Procedure Act. See State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989).

The petitioner asserts that the factual basis for his plea was not entirely accurate and his statement that he would "rather go to trial" indicated he did not wish to plead guilty. As to the factual basis, the record reflects that when the trial court questioned the petitioner regarding the accuracy of the facts summarized by the state, the petitioner replied the facts were "somewhat" correct. The trial court requested that the petitioner clarify which facts were incorrect, and the petitioner's attorney explained to the petitioner that the state was summarizing what its proof would show. Thereafter, the petitioner stated he understood and acknowledged it was in his best interest to plead guilty. In any event, the requirements for the taking of guilty pleas imposed by Rule 11, Tenn. R. Crim. P., including the determination by the trial court that a factual basis exists for such a plea, are not linked to any of the specified constitutional rights in Boykin and, therefore, not cognizable in a suit for post-conviction relief. See State v. Neal, 810 S.W.2d 131, 137 (Tenn. 1991); Prince, 781 S.W.2d at 846. Post-conviction relief is available only when a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Regarding the petitioner's statement during the plea submission hearing, the record reflects that the trial court noted the petitioner's hesitancy during the guilty plea hearing and asked him whether he wanted to go forward with pleading guilty. The petitioner indicated that he wanted to follow his attorney's advice but also that he wanted to go to trial. However, later in the plea hearing, the petitioner acknowledged that it was in his best interest to plead guilty, that he was pleading guilty voluntarily in accordance with his "own free will and choice," and that no one threatened him or forced him to enter his guilty plea. He also affirmed that he understood what he was doing by pleading guilty. In contrast, the petitioner testified at the post-conviction hearing that he did not want to plead guilty in case C01-343 and that he did not know to what offense he was pleading at the time. However, he admitted that he pled guilty in order to receive a twelve-year sentence.

The petitioner's attorney testified that the petitioner was unhappy about waiving his appeal in case C01-342 but that he did not believe the petitioner had changed his mind about pleading guilty or was unaware of what he was doing at the plea submission hearing. The attorney admitted that the petitioner indicated during some of their meetings that he wanted to go to trial but said that the petitioner agreed that pleading guilty was in his best interest.

In denying the petitioner relief, the trial court found that the petitioner's guilty plea was given knowingly and voluntarily, that he was not coerced into pleading guilty, that he was fully aware of

what he was doing at that time, and that he was properly advised of the constitutional rights as required by <u>Boykin</u>. Although we agree the petitioner's statements reflected some hesitancy, his intentions became sufficiently clear as the proceeding progressed. The record does not preponderate against the trial court's findings. The record also reflects that the trial court satisfied the requirements of <u>Boykin</u>. We conclude that the petitioner failed to demonstrate that his guilty plea was not knowing, voluntary, and intelligent.

The petitioner also contends that his plea was involuntary because neither his attorney nor the trial court informed him that the issues presented in his motion for new trial relating to case C01-342 could not be raised again in his petition for post-conviction relief. He acknowledges that he waived his appeal in case C01-342, but maintains that because no one informed him that those issues were precluded from review at subsequent proceedings, his plea was rendered involuntary. The record is devoid of support for the petitioner's contention, and his brief fails to cite any legal authority for this claim. In any event, any failure of counsel to advise as to collateral or indirect consequences of a plea does not constitute the ineffective assistance of counsel. <u>Adkins v. State</u>, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1984).

We conclude that the petitioner did not receive the ineffective assistance of counsel and that his guilty plea was not unknowing and involuntary. Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE